















TKL    11/2/05    15:03
3:05-CV-01119   CLARK V. HEMOLIFE MEDICAL INC
*22*
*P/A.*

1 | Nicholas A. Boylan, Bar. No. 130012
LAW OFFICES OF NICHOLAS A. BOYLAN, APC
2 | 625 Broadway, Suite 600
San Diego, CA 92101
3 | (619) 696-6344

FILED

05 NOV -1 PM 3: 23

CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

4

Attorneys for Defendant,
5 | HEMOLIFE MEDICAL, INC.

6

7

8 | **UNITED STATES DISTRICT COURT**

9 | **SOUTHERN DISTRICT**

10 | JOHN DANIEL CLARK, an individual,          Civil Case No.:  05 CV 1119 JM (AJB)

11

12 |                    Plaintiff,            **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALL DEFENDANTS MOTION TO BIFURCATE DISCOVERY AND TRIAL OF PLAINTIFF'S CLAIM FOR RECISSION OF THE SETTLEMENT AND RELEASE AGREEMENT**
    | vs.
13

14 | HEMOLIFE MEDICAL, INC., a
Delaware Corporation, formerly
15 | known as VIVOSYS, INC.; CRAIG
ROBERTS, an individual; RUDOLPH      **[PURSUANT TO FRCP 42(b)]**
16 | SHEPARD, an individual; LON STONE,
17 | an individual; and DOES 1 through     DATE:  December 16, 2005
18 | 100, inclusive,                       TIME:   11:00 a.m.

19 |                    Defendants.        First Amended Complaint Filed 4/28/05

20

21 |                              **I.**
                          **INTRODUCTON**

22 |       All defendants respectfully move the Court for an Order of bifurcation,

23 | under FRCP 42(b).  Defendants seek to bifurcate the proceeding for all purposes,

24 | discovery and trial.

25 |       Plaintiff's preeminent claim is for recission of the comprehensive

26 | Settlement and Release Agreement entered into with the Plaintiff in 2003.

27 | Unless Clark's recission cause is successful, the great majority of his claims fail

28 | as a matter of law. The recission cause is a claim in equity, to be decided by the

1  Chancellor sitting without a jury. Consistent with FRCP 42(b), bifurcation of the
2  recission claim will be conducive to expedition and economy, and will best serve
3  the interests of the parties and the Court. Defendants suggest that trial of the
4  recission claim can be accomplished in approximately 2-3 days, in a trial to the
5  Court, to occur within the next six months (rather than waiting to schedule a 3
6  week civil jury trial that would not likely occur for a period of years).

7      The few claims asserted by Clark that fall outside the Release Agreement
8  rely on the fact that Hemolife submitted a 1099 to the IRS, and thus Clark had
9  reported income. Defendants do not deny the submission, and it appears that
10 there are few if any factual disputes on this issue. Accordingly, if and when
11 Clark's recission claim fails his remaining assertions based on the tax reporting
12 will be subject to summary judgment (or, at worst, a 2-3 day trial).

13     Defendant Hemolife Medical, Inc. is a start-up medical technology
14 company. Prior to the 2003 Settlement and Release Agreement with Plaintiff,
15 Plaintiff made a variety of allegations suggesting that he was cheated out of a
16 40% ownership interest in the company. Because such ownership claims
17 (however false) can have a major, deleterious effect on the prospects and
18 progress of a start-up technology company, and notwithstanding the false and
19 extortion-like nature of Plaintiff's claim, Defendants entered into a
20 comprehensive settlement and release of all of Plaintiff's claims. Plaintiff thus
21 received a 12-1/2% interest in the company at that time, so that he would go
22 away forever. Pursuant to his recission claim, Plaintiff now seeks again to
23 acquire a 40% interest in the company, by resurrecting the claims he earlier
24 released. It is important to the future business and progress of the company
25 that Plaintiff's 40% interest claim be resolved by the Court in the most
26 expeditious manner possible.

27 / / /
28 / / /

## II.
## ANALYSIS OF PLAINTIFF'S FIRST AMENDED
## COMPLAINT, AS IT RELATES TO BIFURCATION

Plaintiff asserts 19 causes of action.  Plaintiff expressly pleads in the "alternative," seeking to assert numerous causes of action to claim a 40% ownership interest in the company only if his recission claim relative to the Settlement and Release Agreement is successful.

The Release Agreement was executed by Plaintiff Clark effective February 2003.  The release was comprehensive and all-encompassing, and included a California Civil Code §1542 waiver.[1] As a matter of law, Clark fully released and extinguished any and all claims, known and/or unknown, which arose/occurred prior to the release, effective February 2003. E.g., Winet v. Price (1992) 4 C.A. 4th 1159; Jefferson v. Dept. of Youth Authority (2002) 28 Cal.4th 299, 306.

Approximately 80% or more of all of the Plaintiff's claims arose prior to the effective date of the Release Agreement and/or purport to state a basis to rescind the Release Agreement.  For example, paragraphs 15-21 of Clark's First Amended Complaint expressly and specifically allege events which precede the release of February, 2003.  Accordingly, at least 80% of Plaintiff's entire case can be completely and finally resolved pursuant to a Court trial of approximately 2-3 days.  At the conclusion of that Court trial, if recission of the Release Agreement is denied, it is believed that the small remainder of Plaintiff's assertions will quickly collapse, deflate and resolve, or be subject to a simplified summary adjudication.  Prompt disposition of the entire case is probable.

A.    Reviewing the Complaint:  Paragraph 28 of Plaintiff's First Amended Complaint summarizes Plaintiff's entire case, and provides in pertinent part:

> Because CLARK has timely and appropriately offered recission of the SETTLEMENT AGREEMENT, and Defendants have rejected same, the recission, though declared, is legally ineffectual until declared effectual by this Court.  Accordingly,

---

[1] A copy of the Agreement is submitted herewith as Exhibit A to the Declaration of Nicholas A. Boylan.

CLARK is empowered by Defendants' rejection of the recission to plead and does plead causes of action and remedies in the alternative: a) for the court's affirmation of the recission and then, if granted, pursuit of the claims purportedly released by the SETTLEMENT AGREEMENT terms, or (b) if recission is not affirmed, for pursuit of claims against Defendants arising from breach of their obligations arising from the SETTLEMENT AGREEMENT.

The first cause of action is an equitable claim for recission, pursuant to California Civil Code § 1688, et seq, and it appears to be based on allegations of fraud, undue influence, failure of consideration and mistake.   It is founded exclusively on allegations of alleged events prior to the February 2003 effective date of the Release Agreement.   The second cause of action for breach of fiduciary duty and the third cause of action for fraud and deceit, as well as the fourth cause of action for constructive fraud, similarly arise exclusively from events which allegedly occurred prior to the effective date of the Release Agreement.   None of these claims can survive if, following the Court's trial of the recission claim, the Release Agreement is held valid.

The same holds true for the Fifth through Tenth causes of action, for conversion, negligent misrepresentation, breach of the implied convenient of good faith and fair dealing, interference with contract, and intentional and negligent interference with perspective economic.   The allegations supporting those causes of action refer to events prior to the effective date of the Release Agreement, and thus cannot survive if the recission trial before the Court results in validation of the 2003 Settlement and Release Agreement.

Although the ambiguity of Plaintiff's Complaint makes the matter uncertain, if it survives 12(b)(6) review, it appears that in concept Clark's Eleventh cause of action for intentional infliction of emotional distress could evade the recission trial, because Clark relies in part on the post-release filing of a form 1099 with the IRS.   The same holds true for Clark's Twelfth cause of action, for false reporting of tax information.

-4 -

1    Clark's Thirteenth cause of action for accounting and Fourteenth cause of

2    action for civil conspiracy would not survive the Court's recission trial, however,

3    as those causes rely upon events occurring prior to the effective date of the

4    Release Agreement.

5    At least in theory, it is possible that Clark's Fifteenth cause of action for

6    breach of contract could survive the recission trial, as Clark claims a breach of

7    the settlement agreement by means of Defendants thereafter reporting income

8    to the IRS.  However, the Settlement Agreement is completely silent on the

9    income-reporting issue, and this notably weak claim by Clark would likely

10   disintegrate following the recission trial, of thereafter be eliminated by summary

11   judgment.  The Sixteenth cause of action for fraud in the inducement relative to

12   Settlement and Release Agreement clearly would be encompassed and resolved

13   by the recission trial.   In concept, it appears that the Seventeenth cause of

14   action could survive the initial recission trial, and perhaps the same is true for

15   the obscure Eighteenth cause of action alleging Court "statutory violations"

16   based upon the reporting of revenue to the Internal Revenue Service.  Both of

17   these causes of action are based on post-Release tax reporting, and that claim

18   will likely implode or be resolved quickly by motion after the recission trial.  The

19   Nineteenth cause of action is simply for declaratory relief.

20
**III.**
**THE AUTHORITIES SUPPORT AN EXERCISE**
21   **OF DISCRETION IN FAVOR OF A SEPARATE TRIAL**
**TO DETERMINE THE VALIDITY OF THE RELEASE**
22

23   A.    The Decision is Entrusted to the Sound Discretion of the Trial Court.  The

24   determination whether to order separate trials pursuant to FRCP 42(b) is left to

25   the discretion of the trial court.  Jinrow America, Inc. v. Secure Investments,

26   Inc., (9th Cir. 2001) 266 F.3d 993.  Under FRCP 42(b), it is implicit that the

27   court also has the power to limit discovery to the segregated issues.  General

28   Patent Corp. Int'l. v. Hayes Microcomputer Products (C.D.Cal.1997)

B.   The Relevant Factors Favor Bifurcation. In determining whether to order
separate trials under FRCP 42(b), the court should consider factors which
include: 1) convenience and economy to the Court; 2) convenience and
economy to the parties; 3) the possibility that a determination of one issue by
separate trial will avoid the necessity of determining other issues; 4) whether
trying the issues together might cause prejudice against one of the parties and/or
cause jury confusion; 5) whether the initial trial might produce a result that
would be dispositive of most or all of the remaining claims. See, e.g., In re:
Beverly Hills Fire Litigation (6th Cir. 1982) 695 F.2d 207.  Existence of one
factor will support bifurcation. See, Saxion v. Titan-C-Mfg. (6th Cir.1996) 86
F.3d 553,556.

Segregating the equitable recission claim for a prompt trial to the court
serves multiple salutary purposes. Quite simply, unless Plaintiff is able to
rescind the Release Agreement the great majority of his claims are permanently,
finally and forever eliminated. His few remaining claims, based on post-release
reporting of income to the IRS, are completely distinct. If the Release
Agreement is held valid, weeks of trial will be eliminated. Many days of expert
depositions, and their related expense, will be eliminated. Necessary deposition
time for percipient witnesses will be reduced by about 50%. Twenty-five to
forty pre-trial motions in limine will be unnecessary. Fifteen to thirty discovery
and other pre-trial motion disputes will be unnecessary. There will be a dramatic
reduction in consumption of the court's time and resources if the recission trial
proceeds first. It will be easier to schedule a 2-3 day court trial within the next
six months, and it will likely eliminate the need for a multi-week jury trial years
down the road.

If the equitable claim for recission and all other claims are tried together
the probability of jury confusion is real. In dealing with the Release issues,
relative to all other claims, the Court's instructions to the jury would be
complex. See, Winchester Drive-IN THEATRE, Inc., v. 20th Century Fox Film Co.

-6-

1  (N.D. Calif. 1964) 35 F.R.D. 141. Moreover, the Court itself would still be

2  required to resolve the recission claim and, if the Release were held valid by the

3  Court, most if not all of the jury's verdict would be completely irrelevant (or

4  difficult to reconcile in the court's judgment).

5  Defendants' would be substantially prejudiced by the jury's knowledge of

6  the earlier settlement, particularly Defendants' earlier compromise, in exchange

7  for the Release, whereby Plaintiff was granted a 12-1/2 ownership interest in

8  the company.  The jury could be confused into believing that the settlement

9  constituted an admission by Defendants with respect to the underlying claims.

10  The threat of prejudice is great.

11  C.  The Ninth Circuit Authorities Favor Bifurcation and a Prompt Trial to the

12  Court of the Recission Claim.

13  Dollar Systems, Inc. v. Avcar Leasing Systems, Inc. (9th Cir. 1989) 890

14  F.2d 165, applies here.  The Ninth Circuit affirmed the trial courts decision to

15  bifurcate and try first to the court the issue of recission of the Franchise

16  Agreement.  The court made clear that recission was an equitable remedy for

17  which no right to jury trial existed.  Moreover, like here, the equitable and legal

18  claims were distinct.  The issues relevant to the recission claim occurred prior to

19  the execution of the Franchise Agreement, while the issues relevant to the

20  breach of contract claim concerned Avcar's subsequent performance of the

21  Franchise Agreement.  In other words, there were no substantial issues common

22  to both the equitable and legal claims, and it was thus fully appropriate for the

23  Chancellor to segregate and determine first the issue of recission.  In the instant

24  case, with respect to all facts and issues which arose prior to execution of the

25  February 2003 Release Agreement, Plaintiff has no claims whatsoever, legal or

26  otherwise, unless the Release is rescinded in equity by the court.  All of the

27  facts and claims asserted as a basis for recission arose prior to execution of the

28  Release Agreement.  Those facts and issues are completely distinct from Clark's

1   other claims, involving subsequent performance of the 2003 Settlement and

2   Release Agreement and the later reporting of income to the IRS.

3       Cigna Property and Casualty Ins. Company v. Polaris Pictures Corporation

4   (9th Cir. 1999) 159 F.3d 412, which involved recission of an insurance policy, is

5   also supportive.  Trial judge Tashima bifurcated and tried to the court the

6   insurance company's recission claim.  Judge Tashima granted recission, which

7   effectively resolved the entire case, as summary judgment on the remaining

8   claims was granted.  On appeal, Polaris Pictures argued that it had the right to

9   present its claims to the jury at the same time that the insurance company

10  presented its equitable recission claim to the court.  The Ninth Circuit rejected

11  the argument and affirmed the trial court's decision to bifurcate and try the

12  recission claim first.  See also, Granite State Ins. Co. v. Smart Modular

13  Technologies, Inc. (9th Cir.1996) 76 F.3d 1023.

14                                   IV.
                          **CONCLUSION AND PRAYER**
15

16      For all of the reasons stated above, pursuant to F.R.C.P. 42(b) and the

17  Court's discretion thereunder, Defendants' respectfully request that the Court

18  enter an order bifurcating Plaintiff's recission claim for all purposes, and directing

19  that the recission claim will be tried to the Court, sitting as Chancellor.

20  Defendants' further seek an order limiting discovery to the bifurcated issue of

21  recission, and setting a date for the trial to occur within the next six months.

22  Respectfully Submitted,

23                          LAW OFFICE OF NICHOLAS A. BOYLAN, A.P.C.

24  Dated: October 31, 2005

25
                            Nicholas A. Boylan
26                          Attorney for Defendant
                            Hemolife Medical Inc.
27

28

                                    -8-

1  appeal, Polaris Pictures argued that it had the right to present its claims to

2  the jury at the same time that the insurance company presented its

3  equitable recission claim to the court.  The Ninth Circuit rejected the

4  argument and affirmed the trial court's decision to bifurcate and try the

5  recission claim first.  See also Granite State Ins. Co. v. Smart Modular

6  Technologies, Inc. (9th Cir.1996) 76 F.3d 1023.

7                                    **IV.**
                          **CONCLUSION AND PRAYER**
8

9         For all of the reasons stated above, pursuant to F.R.C.P. 42(b) and

10  the Court's discretion thereunder, Defendants' respectfully request that the

11  Court enter an order bifurcating Plaintiff's recission claim for all purposes,

12  and directing that the recission claim be tried to the Court, sitting as

13  Chancellor.  Defendants' further seek an order limiting discovery to the

14  bifurcated issue of recission, and setting a date for the trial to occur within

15  the next six months.

16  Respectfully Submitted,

17
                          LAW OFFICE OF NICHOLAS A. BOYLAN,
18  Dated: October 31,       A.P.C.
19  2005

20                          Nicholas A. Boylan
                          Attorney for Defendant
21                          Hemolife Medical Inc.

22
                          OUTWATER & PINCKES, LLP
23  Dated: October 31,
24  2005

25                          David E. Outwater,
26                          Attorneys for Defendants
                          Craig Roberts, Rudolph Shepard
27                          and Lon Stone

28

                                  -10-

                                                      05 CV 1119 JM (AJB)